MAGNET COVE BARIUM CORPORATION *v.* EVANS.

5-973                                                    291 S. W. 2d 237

Opinion delivered June 11, 1956.

*Riddick Riffel,* for appellant.

*Lookadoo, Gooch & Lookadoo,* for appellee.

LEE SEAMSTER, Chief Justice.   This is an appeal from a judgment of the Hot Spring Circuit Court affirming an opinion of the Arkansas Workmen's Compensation Commission, wherein maximum compensation benefits were awarded the widow and minor child of Sam Evans, deceased, former employee of appellant, Magnet Cove Barium Corporation.   The Commission's award of benefits was predicated upon a finding, "that deceased, Sam Evans, sustained an accidental injury on June 15, 1954, which arose out of and in the course of his employment, and which injury resulted in deceased's death on June 15, 1954."   Appellee is the widow of the deceased, Evans.

For reversal, the appellants contend that the finding of fact that decedent's death resulted from an accidental injury in that the conditions under which he worked caused him to exert himself to a degree over and

above that normally required to operate his machine, is not based upon sufficient competent evidence. It is based on speculation and conjecture, and therefore was insufficient to support the award.

The record reveals that deceased died about 10:00 o'clock the morning of June 15, 1954, while at work in appellant's mine. The immediate cause of death, as revealed by autopsy, was coronary thrombosis with occlusion. The autopsy also brought to light the fact that deceased had a weakened or damaged heart of long standing, such being attested to by the presence of scars on the heart.

As deceased was alone at the time of his death it is not known exactly what his activities were during the moments immediately preceding death. However, the deceased was employed to operate a machine which, by cable attachment, controlled the movements of a five hundred pound bucket used to capture barite ore. Some fifteen to thirty minutes before death occurred a cable attached to the ore bucket broke while deceased was dragging for ore. A fellow employee, Cletus Grinder, left deceased at the time the cable broke, and returned fifteen to thirty minutes later to find deceased, apparently dead, in an ore drift. The location of deceased's body was some thirty-five or forty feet away from the machine he operated, in an ore drift that could only be reached by crawling or stooping. The body was covered to the arm pits with ore of various sizes ranging from the size of a grain of sand to the size of a man's fist. The body was within reaching distance of the heavy ore bucket which, at the time was lodged, or hung, against a wooden timber. The broken cable, referred to by Grinder, had been tied in the customary manner.

The uncontradicted testimony showed in addition to the facts as previously set out that there was a decided decrease in the amount of air where deceased's body was located and that the ore at this particular drift was gaseous and gave off fumes that made breathing difficult; that because of the size of the shot or dynamite blasts Scrapper Drift 91, the regular place of employ-

ment of the deceased, was too hot for him to go to work as his shift came on duty and it was necessary for him to wait a period of time before he could go to his place of employment; that Cletus Grinder, the fellow employee who found the deceased's body, worked several minutes attempting to rake the hot ore off the body — became weak from inhaling the gaseous air and had to leave the body in the shaft to go outside the shaft for fresh air.

The medical testimony adduced in this case is basically the same in that a heart attack such as was fatal to the deceased, could be brought about or precipitated by unusual physical effort or exertion, lack of oxygen and certainly it would be precipitated if an emotional disturbance or fear was added to the above conditions. In this particular instance the deceased had a previous heart condition as was shown by the autopsy report. The condition of the shaft in which the deceased was working was extremely hot and full of gaseous fumes and the deceased was found lying in a horizontal position buried to his arm pits in hot ore. We feel that these factors warrant a conclusion that deceased's death was an accidental injury resulting from an overexertion above and beyond that normally required to perform his duties.

We find that there is substantial evidence to sustain the award of the Commission.

Affirmed.